We will now proceed to the third case, Gamero v. Sessions. Ms. Espinosa. Good morning. May I please have the floor? The underlying theme of this case is whether an agency can ignore the statutory language and redraft it as it pleases. We are, of course, asking you to hold that that an agency cannot do. The first instance that we see that behavior employed by the agency is in the context of an aggravated felony. In the way it classified my client's Illinois state convictions as aggravated felonies. In this context, an aggravated felony means illicit trafficking of a controlled substance, including a drug trafficking crime. As defined in section 924C. Correct, as defined in section 1101A43B of the INA. And then in a parenthetical, it references the CSA definition, section 924C. That definition within 824C is also defined as a felony punishable under the CSA. The plain and literal reading of that sentence, as noted by the Third Circuit, creates a single category of state and federal offenses involving illicit trafficking, i.e., the marketing of drugs. So in other words, illicit trafficking is a generic crime being defined by that sentence. And by the usage of the word including, a drug trafficking crime is merely an illustration, an illustration of a subset, but is not the controlling language in the sentence. So is it your theory, counsel, that somebody convicted of a state drug crime, distribution, drug distribution, that does not require as an element proof of something of value in exchange, cannot be counted for these immigration purposes? That is correct, Your Honor. That's pretty broad. Whether there's no commercial research. Virtually, it's pretty rare for state drug crimes to require proof. And obviously the federal drug crimes don't require proof of the exchange of value, simply because you're dealing with such sketchy transactions to begin with. Well, I will note, Your Honor, that that's incorrect, actually. Even within the federal statute, 21 U.S.C. 848, for example, penalizes continuing criminal enterprise, and that requires a commercial asset. Sure, but Section 841, which is used in virtually all prosecutions, and 846 involving a conspiracy, do not require proof. They do not. They do not talk about remuneration one way or another. It's not an element. Correct. Some state offenses do and some do not. In Illinois, specifically, both offenses for which my client was convicted can be accomplished with or without remuneration. Therefore, it's not an element. But even within Illinois, Illinois penalizes the selling of drugs, and most states actually have a statute that punishes or penalizes the selling of drugs, which is different than possession. Nobody's talking about possession. We're talking about intent to distribute. Okay. Thanks. The point being there are several offenses punished by both federal and at the state level, some of which do have a commercial aspect, some do not, as an element. The point is that the concept of drug trafficking, the concept of trafficking as used in both the federal drug code and all state drug codes doesn't require, as Judge Hamilton pointed out, the exchange of value. It's all about the felony crimes anyway. Let's set aside mere possession crimes because that's not what we're dealing with here. But felony drug trafficking crimes do not require an exchange of value or some sort of remuneration. They require delivery with, you know, possession with intent to deliver or delivery or possession with intent to distribute or distribution without regard to consideration. And so as the term is used in this statute and in any drug code, it doesn't require an exchange of value. And the cases that hold that are just wrong. We're not talking about common everyday parlance. We're talking about a very specified technical use of the term. Well, I believe we're bound, as the court is, by the Supreme Court. The Supreme Court has directly addressed the meaning of the term illicit trafficking. That wasn't a dispositive statement in Lopez. You're referring to the dicta in Lopez. I'm referring to Lopez. And even in Davis. That was not a holding. That was so not a holding. But they defined the term illicit trafficking. And the rule that we rely on is. The Lopez case says mere possession is not trafficking. That's an uncontroversial proposition. What was said in the lead-up to that about what trafficking might otherwise mean in common parlance is not a holding. But when Congress does not define a term within the statute. But it's using a technical sense here. Because this is a very specific section of the code. We're talking about drug crimes. So it requires more than the everyday usage. Well, I mean, the Supreme Court and the Board of Immigration Appeals both did not seem to think so. Set aside what other courts and what the Board of Immigration Appeals has said about this. Just let's use some common sense in reading this statute. We're talking about trafficking used in the federal drug code. As that term is used in state drug codes. Both state legislatures and the Congress are casting a very wide net. And trying to capture all forms of delivery and distribution in the felony crimes. And none of them require strictly a few discrete crimes do. But as a general matter, the definition of possession with intent to deliver, possession with intent to distribute, does not require a financial exchange or remuneration or exchange of value. And that's where, I guess, I'm a bit confused by Your Honor's proposition. Because a lot of state statutes, in fact, some of them that haven't reached the Supreme Court, call their entire drug-related crimes trafficking. And so the trafficking statute in many states includes possession. Possession of a little bit of marijuana, possession of a lot of marijuana, possession of cocaine, any schedule. So actually, it would be opposite to the proposition that Your Honor is making. Because most states use the word trafficking not in the sense that Your Honor... Right, and the statute requires a felony. So that takes out all the mere possession charges. So the statute does not require... So that's the definition for a drug trafficking crime. But I think that's a point being made. So that's an illustration. That is not the generic language being defined. Counsel, as you read the statute, as you read the immigration statutes, if a defendant has been convicted or an alien has been convicted under 21 U.S.C. 841A for possession with intent to distribute cocaine, felony conviction, does that count as a drug trafficking conviction? It does not. Because it does not require proof of an exchange of value. It should not count. It should not count because the way the sentence is structured makes it so that at all times, in order to be an aggravated felony, the offense must meet the definition of illicit trafficking, which requires a commercial aspect. And there is already other... That's also supported by a statutory scheme. That's already what we do with virtually any other crime referenced in the INA. For example, as this corporate world knows, crime involving moral turpitude. It's also not defined by statute, so we look at what we would normally in... You don't think you're going to find additional clarity by comparing this to crime involving moral turpitude, do you? It doesn't make it a lot easier, but what it does is it tells us the application of the reading I'm proposing, which I believe it's plain. We look at the elements of either a state or a federal offense and look for the element of the commercial aspect, remuneration, if we call it such. And that's already what we do for virtually any other crime within the INA. That's what we do for CIMTs. That's what we do for crimes of violence. That's exactly what we do for crimes of violence, in which the Supreme Court has recently delved into. For crimes of violence, for example, which is an aggravated felony as well, we look at is there an element of the use of force. So the reading that I'm proposing is not only the correct reading within the English language, but it's also supported by the statutory scheme in that that's what we do already. How many federal crimes are included, if your reading of the statute is correct? How many federal drug crimes count? Based on an elements only. How many federal drug crimes require an element of exchange of value? I didn't count them, but I know there's some, and I know I just mentioned 848. One? No, I'm not saying that that's the case. I'm just saying I didn't count them. Most federal drug crimes don't require an exchange of value. That is correct. It's hard to believe that your interpretation of the statute is reasonable, that Congress would have legislated to include in the exclusion of drug felons only an extremely narrow grouping of federal and state crimes. No, it is not, Your Honor, because we're talking about aggravated felonies the most, egregious offenses within the INA that would bar any person from almost any form of relief. And so controlled substance crimes make a person removable. So we are looking for something very stringent. We're looking for very heinous conduct that Congress was trying to penalize. And so a drug trafficking, a controlled substance crime would make the person removable, and that's exactly what would happen here. There's two drug-related controlled substance offenses that make the person removable. The only difference is whether he can then apply for discretionary relief or not. So quite to the contrary, aggravated felonies relate to this very stringent, very heinous conduct, and that further supports that illicit trafficking with that commercial aspect is what we're looking at. I only have 42 seconds, so I want to move to the motion to reopen, which is also another instance in which the Board of Immigration Appeals ignores the statutory language. The statute requires that a motion to reopen based on new evidence allege those new facts that will be proven and be supported by some evidentiary materials. The regulation then says prove that the facts are indeed new, are not available at the last hearing, and that they're material. But that's not what the Board did here. They created their own burden of proof, and the government, at their brief, page 55, concedes that they apply a different burden of proof, and they're not free to do that. I only have the two minutes left that I reserve for rebuttal, so I will reserve that. Thank you, Ms. Esparza. Ms. Nardone. Good morning, Your Honors. Suzanne Nardone, attorney for the respondent of the United States. Petitioner here has conceded removability. Therefore, the only questions before the court are, one, whether or not the petitioner met their burden in showing that her convictions were not aggravated felonies under the IMA, two, whether the agency properly denied petitioner's claim for deferral of removal under CAT, where the records show that she did not establish the substantial likelihood of torture. And finally, whether or not the agency applied the correct standard in denying petitioner's motion to reopen. With regard to the finding that petitioner's Illinois convictions were aggravated felonies, there are a couple of points I'd like to respond to that the petitioner's counsel makes. First of all, if the court is to look clearly at just the language of the statute itself and were to take that statute at face value as the petitioner's counsel would have it do so, there are a couple of problems presented. The first is that to read illicit trafficking in a controlled substance as a broader category that then includes a drug trafficking crime, meaning that a drug trafficking crime by nature needs to be a type of illicit trafficking. It's inconsistent, as the Supreme Court in Lopez v. Gonzalez noted, that that's problematic because Section 924A specifically includes many crimes, including mere possession crimes. So that simply cannot be true if we were to look at the plain language of the statute. Also, to look at the plain language of the statute in this way, as petitioner suggests, as the second portion of that statute is being merely illustrative, is simply not the way the statute reads. It doesn't read to suggest including examples such as crimes under the Controlled Substance Act. Rather, it very specifically references crimes under the Controlled Substances Act. And courts that have taken a look at this language, including the Ninth and the Third Circuits, have found it to be ambiguous for these very reasons and have looked to the legislative history of the statute. And legislative history shows that prior to 1990, Section 920 INA 1101A43B only included this broader category of drug trafficking crimes. It wasn't until 1990 that the language was added prior to that references illicit trafficking crimes. And in looking at this, the Ninth Circuit and the Third Circuit have both noted that the intent here was to actually broaden the statute to include state crimes and not just include federal crimes, and also specifically found that there was no intent that Congress wanted to change those crimes that were originally included in the drug trafficking crime category. Based on this, the Court should defer to the Board's finding here because it's a permissible interpretation of the statute. The Board here found that the petitioner would have committed a crime either under one of two routes, which is the same discussion that the Board followed in Matter of Davis. And that would be either because the crime is punishable as a felony under the CSA, which is known as a hypothetical federal felony route, or because the offense contains a trafficking element. In this regard, the Board specifically found that petitioner's convictions here fell underneath that category under the hypothetical federal felony route, regardless of whether or not they included a trafficking element. And on that basis found that the crimes were consistent with and were not in any way broader than the crimes under the CSA under 21 U.S.C. 841 A.1. Are you conceding that the term trafficking as used in this statute requires an exchange of value? No, Your Honor. What I'm saying is that it does not. That's what the Board found here, that there was no need for there to be a trafficking element or any type of exchange of value in order to be found under the hypothetical federal felony route. There are two routes, and the Board properly found the first route. I understand that's how the Board has interpreted the statute. I question whether the term illicit trafficking in a controlled substance requires an exchange of value either, even accepting the interpretation that the term including means a subset of the broader category. That's the way it's been interpreted by the Board in this case, Your Honor, that there are two different routes by which you... I'm aware of that. I'm questioning whether that's right. You're asking whether or not there... Trafficking as used in drug codes, it's a term of art, and it's not meant to require an exchange of value because most drug crimes do not. So for the Board to interpret the term trafficking in this statute as requiring some sort of commercial transaction strikes me as wrong. Okay, Your Honor, I'm not... On the face of it. And I know there's dicta in the Lopez decision suggesting that, but that strikes me as just that. Yeah, dicta. Dicta that we shouldn't take to the bank. I'm not sure that the Board found one way or the other on that issue here because I... Right, because this falls in the other category, specifically a categorical match with a CSA offense. Yes, and, Your Honor, I'm not going to pass judgment on that one way or the other because I'm only here to defend the Board's decision. I get it. Right. I'd like to move on quickly to the other two issues that are raised in this case, which are the denial of petitioner's claim under the Convention Against Torture. The Court should find that substantial evidence supports the agency's denial of petitioner's CAT claims because the facts do not compel the finding that petitioner faces a substantial likelihood of torture in Mexico. Petitioner bases his claims on four incidents, four disparate incidents that were unrelated by unknown persons that occurred over a period of five years during which the petitioner was not even in Mexico. And none of these cases involved either torture of his immediate family members or threats of any type, actually, toward his family members. And, Lopez, the agency found here that all of the witnesses really speculated that the cartel was involved in any of these incidents. And if you look at the record, there are specific moments where the petitioner himself concedes he doesn't know who these people were that were looking for him in Mexico. He concedes that the people going to his house and the people that broke into his house on another occasion could have been different people. He concedes that the shots that were fired at Rufio's house likely didn't have anything to do with him. His wife and daughter also only speculated as to who these people were that were harassing them in different ways in Mexico. But more importantly, the facts here just don't compel a finding that there's a substantial likelihood of torture because none of these incidents involved any types of threats of harm. Petitioner's case in this regard is most analogous to this Court's finding in Gutierrez v. Lynch, where, again, there were numerous incidents that occurred over a period of many years and no indication that the petitioner faced a threat, a substantial threat of torture. And it's readily distinguishable from this Court's holding in Rodriguez-Molinero where you had a prior drug dealer who had actually previously been tortured by cartel members and he owed them $30,000 and the cartel had threatened his family in seeking information on him and actually then killed members of his family. So the case here is clearly distinguishable from Rodriguez-Molinero and is more like the case in Gutierrez. There's also no merit to the petitioner's claim that the agency applied the incorrect standard of review here. Petitioner criticizes the Board for requiring a high and specific burden. As this Court has found, the harsh definition of torture does set a high bar of relief. And also, Petitioner under Catt is required to make a particularized showing that they face an individualized threat of torture, not just the fact that these incidents do happen in Mexico because certainly they do, but more specifically it needs to be tied to that individual, and that showing was not made here. And finally, Petitioner has not made any showing that there was evidence that was ignored in his case. Although he's unhappy with the result and maybe with some of the conclusions that were drawn by the Board, he doesn't point to any specific evidence that was ignored. With regard to the motion to reopen, the Board did not abuse its discretion in denying Petitioner's motion. It's well established that the Board has broad discretion to deny a motion to reopen. The Supreme Court in several cases has discussed the fact that motions to reopen are strongly disfavored because there is an interest in bringing to close immigration cases and not allowing people to endlessly reopen their cases and relitigate them. In this case, the Petitioner submitted evidence which was very similar to his previous evidence and also evidence regarding an unfortunate kidnapping of his family members by a cartel, well, suspected cartel members. However, these were extended family members, and the Board found that Petitioner simply did not make any connection to himself personally, that this incident in any way indicated that he himself would likely face the same result. Based on the foregoing, the Board properly concluded that Petitioner did not meet his heavy burden of showing that if his proceedings were remanded, that they would likely change the outcome of his case. Finally, there's simply no support for Petitioner's claim that somehow the IRERA statute that was from 1996 somehow limited the grounds upon which a Board can deny a motion to reopen. The Supreme Court has long held that motions to reopen can be denied on three bases, the last being that it can be denied regardless of whether or not the Petitioner meets the requirements merely on the basis of discretion. So the Board has been given great discretion in denying these motions. Although IRERA made some changes by providing a statutory basis for a motion to reopen, in the Dada case, which is the Petitioner's sites, the Supreme Court talks about the fact that the reason that the motion to reopen was put into a statute is essentially because they were concerned about aliens reopening their cases and trying to prolong their stays in the United States. So it wasn't in any way to limit the Board's discretion, but rather to try to curb motions to reopen. Based on the foregoing, the Court should uphold the Board's denial of Petitioner's claim for cancellation of removal as he's failed to establish that he should not have been found to have committed an aggravated felony under INA 1101A43B and also uphold the request for denial or deferral of removal under the CAT. Thank you so much. Thank you, Ms. Sargon. Ms. Espinosa? I'll briefly address first the motion to reopen and the contention that the government made that based on discretion, as if it were a discretionary form of relief, it can be denied. This relates to CAT, which is a mandatory form of relief, so discretion is irrelevant. Moving to CAT itself, this case is... You're saying there's no discretion to deny motions to reopen under CAT? What the government is saying is that there is discretion under the made-up pretext of prima facie. That applies to prima facie in the context of a new form of relief for a discretionary form of relief like cancellation. This is CAT. It's a mandatory form of relief, so the Board's discretion on whether they would grant or not doesn't matter. They have to apply the elements for the relief itself. Going back to CAT, Gutierrez is distinguishable. In that case, there are being three incidents. The two major incidents happened 10 years apart, and the petitioner Gutierrez had never been inquired for by the cartel. So it's highly distinguishable because here we have a pattern of practice of the cartel constantly surveilling the petitioner, his family home, including overt acts as breaking into his house with people dressed in military gear or corrupt military officials. So it's highly distinguishable. And the important point about CAT is that the Board said that there was no evidence, and I cite to all of the evidence that they ignored in that sense in my brief. Lastly, there's two points to be made. Regarding the legislative history, there were two amendments after 1990, both in which Congress looked at the sentence here in contention, made changes to the sentence, a change from 924C2 to 924C, and left the language untouched. So that goes to show that there was no—the Congress did not intend to change this statutory language or supplement the word including for or as the Board has done. And lastly, the main principle here, and I think your Honor's question was regarding between the Board of Immigration Appeals interpreting illicit trafficking. The issue with that, in my view, is that we cannot leave an entire phrase in the statute completely meaningless or redundant. So illicit trafficking has to be given a meaning and has to be given effect. That's basic statutory construction. So the definition of illicit trafficking—so it has to have some definition. Can there be legal drug trafficking? If you want us to consider illicit drug trafficking, having special meaning, so does it follow there's legal drug trafficking? Yes. Like, for example, dispensing, I guess, would be— Well, I'm not talking about a pharmacist. But it kind of encapsulates selling for profit. So I think that's why the word illicit is very important because it goes to conduct that requires a transaction for remuneration that it's not illicit, that it's illegal and punished. And so we're asking you to not hold illicit trafficking redundant and meaningless. All right. Thank you. Thank you, Assistant Auditor. Thank you, Ms. Nargo. The case is taken under advisement.